UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

D.B. ZWIRN & CO., L.P.,

         **Plaintiff,**

    - against -

TODD DITTMANN and SUSAN CHEN,

        **Defendants.**

------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## OPINION AND ORDER

### 09 Civ. 10498 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/10

## I.    INTRODUCTION

Defendants Todd Dittmann and Susan Chen move to dismiss this action pursuant to Rules 12(b) and 13(a) of the Federal Rules of Civil Procedure on the ground that plaintiff D.B. Zwirn & Co.'s ("DBZ") claims constitute compulsory counterclaims that DBZ was denied leave to assert in a previously-filed action. Alternatively, Dittmann and Chen seek a stay of this action pending final resolution of the prior action. Dittmann and Chen also seek dismissal of DBZ's fraud claims for failure to state those claims with the particularity required by Rule 9(b). For the reasons provided below, the motion is denied in its entirety.

## II.   BACKGROUND

### A.   The Texas Action

Dittmann and Chen are former employees of DBZ, an investment management company based in New York. On February 11, 2009, Dittmann filed suit against DBZ in the United States District Court for the Southern District of Texas to recover bonuses or incentive compensation allegedly promised to Dittmann by DBZ ("Texas Action").[1] DBZ answered Dittmann's complaint on March 24, 2009.[2] On June 30, 2009, Dittmann filed an Amended Complaint in which an additional plaintiff, Chen, also claimed to be due incentive compensation.[3] On July 15, 2009, DBZ filed a motion to dismiss a number of the causes of action asserted in the Amended Complaint.[4]

Despite the pendency of its motion to dismiss, on November 13, 2009, DBZ filed an Amended Answer and Original Counterclaim, along with a motion

---

[1]     See Docket Sheet, *Dittmann v. D.B. Zwirn & Co.*, No. 09 Civ. 402 (S.D. Tex.) ("Texas Action"), Ex. A to Declaration of Michael C. Rakower, Defendants' Counsel, in Support of Defendants' Motion to Dismiss ("Rakower Decl.").

[2]     See id.

[3]     See id.; First Amended Complaint in Texas Action, Ex. B to Rakower Decl.

[4]     See Docket Sheet in Texas Action.

for leave to file the counterclaim.[5] DBZ's proposed counterclaim charged Dittmann and Chen with breach of contract and fraud based on allegations that they forwarded confidential DBZ materials to certain email accounts in violation of DBZ's Confidentiality Agreement, Code of Ethics, and Policies and Procedures (collectively "Confidentiality Agreement").[6] In support of its motion, DBZ argued that "[i]t was only DBZ's recent sorting through terabytes of data in response to the Court's order that it produce additional electronically stored information that led it to discover [the alleged confidentiality breaches]."[7] DBZ further argued that the counterclaim also constituted an affirmative defense to Dittmann's and Chen's claims because "compliance with DBZ's Confidentiality Agreements was a condition precedent to Dittmann's or Chen's receiving [the incentive compensation they claimed they were due]."[8]

On December 8, 2009, the Texas district court denied DBZ leave to file its counterclaim, concluding that Dittmann and Chen would have been

---

[5]   *See* Defendant D.B. Zwirn & Co.'s Motion for Leave to File Counterclaim and Serve Second Set of Requests for Production to Plaintiffs in Texas Action, Ex. C to Rakower Decl.

[6]   *See id.*

[7]   *Id.* at 1.

[8]   *Id.*

3

prejudiced by the new claim because not only had "*all* the deadlines other than the deadline for the filing of the Joint Pretrial Order . . . passed" but also "the date for [DBZ's] dissolution is set for May 2010."[9]  DBZ did not seek reconsideration of the court's decision.

On February 8, 2010, the Texas court granted summary judgment to DBZ, denied motions for partial summary judgment filed by Dittmann and Chen, and denied DBZ's motion to dismiss as moot.[10]  Dittmann and Chen filed a motion for reconsideration that is pending in the Texas court.

### B.  The New York Action

On December 28, 2009, DBZ filed the instant action in the Southern District of New York.  DBZ asserts essentially the same claims that it was denied leave to pursue in the Texas Action.[11]

### C.  Confidentiality Agreement — Consent-to-Jurisdiction Provision

---

[9]  12/8/09 Order in Texas Action, Ex. E to Rakower Decl.

[10]  *See* 2/8/10 Opinion and Order in Texas Action, Ex. 3 to Declaration of John E. Chapoton, Jr., Plaintiff's Counsel, in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Chapoton Decl."); 2/8/10 Final Summary Judgment in Texas Action, Ex. 4 to Chapoton Decl.

[11]  *Compare* Complaint, *D.B. Zwirn & Co. v. Dittmann*, No. 09 Civ. 10498 (S.D.N.Y. Dec. 23, 2009) ("New York Action") *with* Defendant D.B. Zwrin & Co's Amended Answer and Original Counterclaim in Texas Action, Ex. C to Rakower Decl.

4

The Confidentiality Agreement that DBZ claims Dittmann and Chen violated contains a provision entitled "Consent to Jurisdiction, Etc."[12] This clause provides:

> The Company may bring an action or special proceeding in a state or federal court of competent jurisdiction sitting in the City of New York, for the purpose of temporarily, preliminarily or permanently enforcing the provisions of this Agreement or seeking any other remedy, and the Employee consents to and hereby submits to the exclusive jurisdiction of any state or federal court located in the City of New York for the purpose of any disputes arising hereunder or any equitable relief arising out of or relating to this Agreement. Each of the parties hereto irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such proceeding brought in the state and federal court in the City of New York, and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum. Each of the parties hereto also agrees that any final and unappealable judgment against a party hereto in connection with any action, suit or other proceeding shall be conclusive and binding on such party and that such award or judgment may be enforced in any court of competent jurisdiction, either within or outside of the United States.[13]

---

[12]    Employee Confidentiality, Non[-]compete and Non-solicit Agreement Between DBZ and Dittmann ("Dittmann Confidentiality Agreement") ¶ 14, Ex. 1 to Chapoton Decl. *Accord* Employee Confidentiality, Non[-]compete and Non-solicit Agreement Between DBZ and Chen ("Chen Confidentiality Agreement") ¶ 14, Ex. 2 to Chapoton Decl.

[13]    Dittmann Confidentiality Agreement ¶ 14. *Accord* Chen Confidentiality Agreement ¶ 14.

## III.   DISCUSSION

### A.   Compulsory Counterclaims and Consent-to-Jurisdiction Clause

According to Dittmann and Chen, DBZ's claims are barred by Rule

13 of the Federal Rules of Civil Procedure because they were compulsory

counterclaims in the Texas Action.  Rule 13(a)(1) provides in relevant part: "A

pleading must state as a counterclaim any claim that — at the time of its service —

the pleader has against an opposing party if the claim: (A) arises out of the

transaction or occurrence that is the subject matter of the opposing party's claim;

and (B) does not require adding another party over whom the court cannot acquire

jurisdiction."  "The test for determining whether a counterclaim is compulsory is

whether a logical relationship exists between the claim and the counterclaim and

whether the essential facts of the claims are so logically connected that

considerations of judicial economy and fairness dictate that all the issues be

resolved in one lawsuit."[14]  "If a party has a compulsory counterclaim and fails to

plead it, the claim cannot be raised in a subsequent lawsuit."[15]

---

[14]     *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (quotation marks
omitted).  *Accord Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir.
2004).

[15]     *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697,
699 (2d Cir. 2000).  *Accord Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60
(1962) ("The requirement that counterclaims arising out of the same transaction or
occurrence as the opposing party's claim 'shall' be stated in the pleadings was
designed to prevent multiplicity of actions and to achieve resolution in a single

6

DBZ concedes that "the claims in this action bear a logical relationship to the claims at issue in the Texas Action . . . ."[16] Nevertheless, DBZ, citing principally to the Seventh Circuit's decision in *Publicis Communication v. True North Communications Inc.*,[17] argues that the consent-to-jurisdiction clause in the Confidentiality Agreement saves this lawsuit.

In *Publicis*, the Seventh Circuit considered whether an Illinois district court properly entertained a compulsory counterclaim that was subject to a forum-selection clause specifying Delaware as the sole forum in which to bring such a claim. Specifically, the forum-selection clause stated: "'Any claim arising out of a request under Section 1.1 of this Agreement shall be brought only in a court of the State of Delaware or in a United States District Court located within the State of Delaware.'"[18] Assuming that the counterclaim was compulsory in the sense that it "'ar[ose] out the transaction or occurrence that is the subject matter of the opposing

---

lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint.").

[16]     Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 4.

[17]     *See* 132 F.3d 363 (7th Cir. 1997).

[18]     *Id.* at 365 (quoting agreement).

party's claim,'"[19] the Seventh Circuit held that district court erred in considering

the counterclaim.[20]

> [Claim p]reclusion is an affirmative defense, and like other
> legal affairs is subject to contractual adjustment by the
> parties.  Just as one litigant may promise not to plead the
> statute of limitations, so it may promise not to plead the
> defense of claim preclusion. . . .  If the parties promise to
> litigate a dispute only in a particular forum, a party to the
> contract cannot seek to bar the litigation in that forum
> because the claim was not presented in some other forum.
> . . . [A] party to a forum-selection clause may not raise in
> a different forum, even as a compulsory counterclaim, a
> dispute within the scope of that clause.[21]

Thus, "by agreeing to litigate in Delaware all claims arising out of requests under

§ 1.1 of the pooling agreement," the parties promised (1) "not to assert such claims

in other forums whether or not they would be 'compulsory' counterclaims," and (2)

not to contend (in Delaware) that . . . the claim [should have been raised] somewhere

else."[22]  In short, the Seventh Circuit held that the Illinois district court should have

enforced the contract and dismissed the counterclaim.[23]

---

[19]     *Id.* (quoting Fed. R. Civ. P. 13(a)).

[20]     *See id.* at 366.

[21]     *Id.* (citing, for example, *Karl Koch Erecting Co. v. New York
Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988)).

[22]     *Id.*

[23]     *See id.*

8

By contrast to the mandatory forum-selection clause at issue in

*Publicis*, DBZ and Dittmann and Chen dispute whether the consent-to-jurisdiction

clause in the Confidentiality Agreement is mandatory or permissive.  The Second

Circuit has explained the difference:

> Forum selection clauses may serve two distinct purposes.
> Contracting parties may intend to agree on a potential situs
> for suit so as to guarantee that at least one forum will be
> available to hear their disputes.  A so-called *permissive*
> forum clause only confers jurisdiction in the designated
> forum, but does not deny plaintiff his choice of forum, if
> jurisdiction there is otherwise appropriate.  Alternatively,
> contracting parties may intend to agree in advance on a
> forum where any and all of their disputes must be brought
> to eliminate surprise of having to litigate in a hostile forum.
> . . . A forum selection clause is viewed as *mandatory* when
> it confers exclusive jurisdiction on the designated forum or
> incorporates obligatory venue language.[24]

Here, DBZ argues that the consent-to-jurisdiction clause is mandatory,

while Dittmann and Chen argue that it is permissive.  The key sentence of the

provision states:

> The Company *may* bring an action or special proceeding in
> a state or federal court of competent jurisdiction sitting in
> the City of New York, for the purpose of temporarily,
> preliminarily or permanently enforcing the provisions of
> this Agreement or seeking any other remedy, and the
> Employee consents to and hereby submits to the *exclusive*
> jurisdiction of any state or federal court located in the City

---

[24]     *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)
(citations omitted and emphasis added).

9

> of New York for the purpose of any disputes arising
> hereunder or any equitable relief arising out of or relating
> to this Agreement.[25]

This first part of the sentence, standing alone, is obviously permissive: That DBZ

*may* sue in New York City expressly leaves open the possibility that either party

could file suit elsewhere, including Texas.[26] However, the use of the word

"exclusive" in the second part of the sentence indicates that the parties meant for

New York City to be the sole forum for a suit arising under the Confidentiality

Agreement. But if, as DBZ argues, New York City is the exclusive forum, then

use of the word "may" makes little sense.

      The second sentence of the provision does not provide more guidance.

That the parties "irrevocably waive[d], to the fullest extent permitted by law, any

objection . . . to the laying of the venue of any such proceeding brought in the state

and federal court in the City of New York, and any claim that any such proceeding

brought in such a court has been brought in an inconvenient forum,"[27] neither

---

[25]    Dittmann Confidentiality Agreement ¶ 14 (emphasis added). *Accord* Chen Confidentiality Agreement ¶ 14.

[26]    *See, e.g., Proyecfin de Venezuela, S.A. v. Blanco Indus. de Venezuela, S.A.*, 760 F.2d 390, 396 (2d Cir. 1985) (describing "may be brought" as permissive language).

[27]    Dittmann Confidentiality Agreement ¶ 14. *Accord* Chen Confidentiality Agreement ¶ 14.

10

requires a New York City forum nor refutes exclusive jurisdiction there.[28]

Because the consent-to-jurisdiction clause "is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it."[29] The drafter was undoubtedly DBZ and, therefore, the provision is construed to be permissive.[30] So construed, the clause permits but does not require a New York City forum for disputes arising under the Confidentiality Agreement. In other words, the Texas Action could have been an appropriate forum for DBZ's present claims. Consequently, the permissive consent-to-jurisdiction clause does

---

[28] *Compare Blanco v. Blanco Indust. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993) ("The permissive nature of the clause is not strengthened by . . . the defendant's irrevocable consent to suit in th[e] designated fora at the plaintiff's election and the defendant's waiver of forum non conveniens objections." (quotation marks, citations, and alterations omitted)) *with United Consumers Club, Inc. v. Prime Time Marketing Mgmt.*, No. 07 Civ. 358, 2008 WL 150623, at *4 (N.D. Ind. Jan. 11, 2008) (magistrate's opinion and order) (concluding that the following forum-selection clause to be mandatory: "[Prime Time] agrees that [DirectBuy] may institute any action against [Prime Time] arising out of or relating to this Agreement in any state or federal court of general jurisdiction in Cook County, Illinois or in Lake County, Indiana, and [Prime Time] irrevocably submits to the jurisdiction of such court and waives any objection he may have to either the jurisdiction or venue of such court"), *objections overruled by* 2008 WL 2572028, at *3 (N.D. Ind. June 25, 2008).

[29] *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y. 1987) (citing, for example, *Stern v. Satra*, 539 F.2d 1305, 1310 (2d Cir. 1976)).

[30] *See* Complaint in New York Action ¶ 8 (describing the Confidentiality Agreement between DBZ and Dittmann and between DBZ and Chen as "standard").

11

not prohibit Dittmann and Chen from asserting the affirmative defense of claim preclusion here.

Nonetheless, dismissal is not appropriate for five reasons. *First*, because the Texas court did not permit DBZ to assert its counterclaims, allowing DBZ's present claims to proceed does not risk multiplicity of actions — the primary policy concern underlying the compulsory counterclaim rule. *Second*, again because DBZ's claims were not permitted in the Texas Action, disallowing DBZ's claims here would mean that the merits of those claims could never be pursued. The law, however, prefers decisions on the merits. *Third*, though the Texas court found that DBZ's claims were late with respect to the matters pending there, DBZ appears to have attempted to assert its claims soon after it learned of the underlying facts. *Fourth*, at the time DBZ filed its amended answer and counterclaim in the Texas Action, DBZ had never filed an answer to any claim asserted by Chen. Though DBZ did not raise this point in the Texas Action, DBZ appears not to have needed court permission to counterclaim against Chen. *Finally*, as discussed above, the consent-to-jurisdiction clause is ambiguous; therefore, the parties' intent as to whether disputes arising under the Confidentiality Agreement should be filed solely in New York City is unclear. At bottom, it would be fundamentally unfair in these circumstances to dismiss DBZ's claims against Dittmann and Chen.

12

## B.    A Stay Is Not Warranted

The next question is whether to stay this case pending the outcome of the Texas Action.  A stay is not appropriate because DBZ's claims are not pending in the Texas Action.  I recognize that if an appeal is ultimately taken from the Texas court's final judgment, DBZ might argue that that court erred in not permitting its counterclaims against Dittmann and Chen.  However, the possibility of DBZ making and succeeding on such an argument is too remote to justify a stay here.  Moreover, such an argument makes little sense if the claims proceed here.

## C.    DBZ's Fraud Claims Are Pled With Sufficient Particularity

Finally, Dittmann and Chen argue that DBZ's fraud claims should be dismissed because DBZ has failed to state them with the particularity required by Rule 9(b).  Rule 9(b) imposes a "heightened pleading standard"[31] in a fraud action by requiring that "the circumstances constituting fraud . . . be stated with particularity."[32]  To comply with the pleading requirements of Rule 9(b), a Complaint must: "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

---

[31]    *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

[32]    Fed. R. Civ. P. 9(b).

made, and (4) explain why the statements were fraudulent.'"[33]

The Complaint clearly specifies the statements that DBZ contends were fraudulent, namely the statements made in certifications supplied by Dittmann and Chen that they were in compliance with DBZ's Confidentiality Agreement.[34]  The Complaint alleges that Dittmann and Chen made such representations on at least two occasions each, on January 2, 2007 and January 28, 2008 for Dittmann, and on January 22, 2007 and January 30, 2008 for Chen.[35]  The documents in which these alleged misrepresentations were made by Dittmann and Chen also were attached to the Complaint.[36]  This satisfies the requirement that the Complaint specify the statements alleged to be fraudulent, identify the speaker, and state where and when the statements were made.

Dittmann and Chen argue that the Complaint provides "absolutely no information as to (1) precisely how the statements were fraudulent, (2) what Dittmann and Chen did that caused their certifications of compliance to be

---

[33]     *Lerner*, 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[34]     *See* Complaint in New York Action ¶¶ 9, 24.

[35]     *See id.*

[36]     *See id.* at Exs. A-D.

inaccurate, or (3) when they did it."[37]  The Complaint, however, clearly alleges that Dittmann's and Chen's statements of compliance with the Confidentiality Agreement were fraudulent because Dittmann and Chen were, in fact, out of compliance with the agreement when they sent confidential DBZ information from their DBZ email accounts and from DBZ's servers to personal, private email accounts outside the company.  These allegations provide Dittmann and Chen with "fair notice of the claim or the factual ground upon which it is based."[38]

## IV.   CONCLUSION

For the reasons stated above, defendants' motion is denied.  The Clerk of Court is directed close this motion (document number 5).  An Initial Case Management Conference is scheduled for April 15, 2010 at 5:00 p.m.  The parties shall comply with the Court's Individual Rules, including Rule IV.A.2.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      March 23, 2010
            New York, New York

---

[37]      Memorandum of Law in Support of Defendants' Motion to Dismiss, at 9-10.

[38]      *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

15

## - Appearances -

**For Plaintiff:**

Maureen Mary McGuirl, Esq.
72 Muirfield Court
Poughkeepsie, New York 12603
(845) 452-2980

H. Ronald Welsh, Esq.
John E. Chapoton, Esq.
Lief Alexander Olson, Esq.
Welsh & Chapoton LLP
8 Greenway Plaza, Suite 1120
Houston, Texas 77046
(713) 554-7770

**For Defendant:**

Michael C. Rakower, Esq.
David Emanuel Miller, Esq.
Law Office of Michael C. Rakower
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 660-5550

Andrew S. Hicks, Esq.
Logan E. Johnson, Esq.
Schiffer Odom Hicks & Johnson PLLC
3200 Southwest Freeway, Suite 2390
Houston, Texas 77027
(713) 357-5152